[No. D054408. Fourth Dist., Div. One. Aug. 23, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
KARL JOSEPH RUSSELL, JR., Defendant and Appellant.

## Counsel

Jamie L. Popper, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James Flaherty and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HUFFMAN, Acting P. J.**—Following a court trial, Karl Joseph Russell, Jr., was convicted of first degree murder (Pen. Code,[1] §§ 187, subd. (a), 189), evading an officer and causing serious bodily injury or death (Veh. Code, § 2800.3), residential burglary (§§ 459, 460), and vehicle theft (Veh. Code, § 10851, subd. (a)). The court also found true an allegation that Russell inflicted great bodily injury in the commission of the vehicle theft (§ 12022.7, subd. (a)).

Russell was sentenced to an indeterminate term of 26 years to life, composed of 25 years to life for first degree murder, plus one year for the use of a deadly weapon enhancement pursuant to section 12022, subdivision (b). The court stayed the terms for the remaining counts and enhancements pursuant to section 654.

Russell appeals challenging only his conviction for first degree murder. Russell contends that the felony-murder escape rule should not apply to flight during the commission of a burglary and that even if it does apply the evidence is insufficient to show that the death in this case occurred during an escape from the commission of a burglary. Russell also contends that a sentence of 26 years to life for first degree felony murder is cruel and unusual punishment. We will reject both contentions and affirm the conviction.[2]

### STATEMENT OF FACTS

About 4:30 or 4:35 a.m. on September 5, 2006, Ryan Creighton was outside of his house on North Tremont Street in Oceanside. Creighton was loading his truck in order to go to a 5:30 a.m. fire academy class at Palomar

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] Russell contends, and the People concede, he is entitled to two additional days of custody credits. We will modify the judgment to add an additional two days' custody credits.

College. Creighton observed movement taking place on the porch of his neighbors across the street, Klaas and Golda Meurs. Creighton saw a shadowy figure moving quickly on the porch of the Meurses' residence. In the process of loading his truck Creighton made a loud sound when he dropped the tailgate of the truck. Creighton noted then that the quickly moving figure stopped, looked in his direction for three to five seconds, then bent over, turned around and went back inside the Meurses' residence. Thereafter, Creighton observed a flashlight sweep in the interior of the Meurses' house. Creighton then noticed what he thought were lights in the upper story bedroom of the Meurses' residence and therefore decided he did not need to call the police.

Creighton continued to load his truck and then drove away for his training class. He estimated based upon his normal schedule that he would have left about 4:40 a.m. When Creighton left his house, the neighbors' garage door was still down in the normal position.

Investigation later determined that the Meurs family was away at the time of these events. They had left their white Oldsmobile in their closed garage.

Since Russell does not challenge the sufficiency of the evidence to prove the residential burglary, the vehicle theft or his flight from police causing death, we will truncate the discussion of all the facts surrounding those events and deal only with those necessary to provide a foundation for the discussion of the issue of sufficiency of the evidence to prove felony murder.

The investigation revealed that the Meurses' home had been burglarized, that items were taken, including the Meurses' white Oldsmobile from the garage. The garage door remained open when the burglar left with the Oldsmobile.

Russell left a duffel bag close to the sliding glass door of the Meurses' residence. Items of Russell's personal property and property taken from the residence were located in that duffel bag.

About 4:52 a.m., approximately 12 minutes after Creighton had left the Meurses' home, where the garage door remained closed, Carlsbad Police Sergeant Mickey Williams observed the Meurses' white Oldsmobile stopped at a red light at the intersection of Plaza Drive and El Camino Real in the City of Carlsbad. Russell was driving the Oldsmobile. The location in Carlsbad is around four miles from the area in Oceanside where Russell had been last seen.

At the time Officer Williams was likely observed by Russell, Williams was driving a marked patrol car, was in uniform and was about to exit the parking lot near the intersection where Russell was stopped at a red light.

Before the light changed, Williams observed Russell rapidly accelerate, driving through the red light and across the intersection. The officer could hear the Oldsmobile accelerating at a rapid rate proceeding southbound on El Camino Real. The police officer activated the patrol car's emergency overhead lights and pursued the white Oldsmobile. The officer estimated that at times the Oldsmobile was traveling 70 to 80 miles per hour in a 35-mile-per-hour zone.

The chase continued at high speeds with the white Oldsmobile running red lights, driving erratically, and weaving in and out of traffic. At one point, Russell drove 60 to 80 miles per hour down the center median of a shopping area designated for left turns. At one point the Oldsmobile reached speeds of 100-plus miles per hour.

Ultimately, with the police officer remaining in pursuit of Russell, the stolen Oldsmobile crashed into the front passenger side of a pickup truck driven by the victim, Rodrigo Vega. Vega was killed as a result of that collision. When Officer Williams approached Russell at the crash scene, Russell threatened the officer, stating that he had a gun, and then ran away. Carlsbad police pursued Russell and found him crouching in the corner next to an office building.

Police officers recovered items of property stolen in the burglary in Russell's pants pockets and from the Oldsmobile. They also found a silver flashlight under the passenger seat of the car. A blood sample taken from Russell about 6:07 a.m. showed he had a blood-alcohol level of 0.12 percent. A later blood sample showed a blood-alcohol level of 0.11 percent. A forensic criminalist testified that at the time of the fatal crash, Russell likely had a blood-alcohol level of 0.14 percent.

Russell testified in his own defense and testified to drinking prior to the burglary. He said he met his friend Kurt McFarlane at the Rusty Spur bar in Oceanside about 9:30 p.m. He testified about entering the Meurses' residence with McFarlane and acknowledged leaving a bag outside the door of the residence. He said they were in the house for about an hour and that McFarlane was the one seen on the porch.

Russell testified that after they left the residence he dropped McFarlane off at an area near the beach where McFarlane often slept on a boat several blocks away. Russell said he then drove around to see if he could "kick it

with some friends," but did not find anyone and got lost in the Oceanside area. He did not remember driving in the manner in which Officer Williams described his driving and only remembered he was trying to find a place to sleep.

## DISCUSSION

### I

### *THE FIRST DEGREE FELONY MURDER CONVICTION*

Russell contends there is not sufficient evidence to support a conviction for felony murder. He contends that there is insufficient evidence to establish that at the time of the accident he was still in the commission of the burglary or that there was evidence that he was fleeing from the scene of the burglary. As a subset of that contention Russell also argues that the escape doctrine of felony murder cannot apply to an escape from a burglary and that even if it does, the escape doctrine cannot apply unless the perpetrator is actively pursued from the crime scene or in the alternative that the police have been called and the crime reported.

■ Applying the appropriate standard of review, we are satisfied that Russell is wrong on his legal arguments that the escape doctrine of felony murder does not apply to burglary because case law establishes that it clearly does. We think he is also wrong in his contention that for the escape doctrine to apply the perpetrator must be actively chased from the scene or at a minimum someone must have called the police promptly upon the perpetrator's departure from the scene. No case requires such pursuit. For the escape doctrine to apply, it is only necessary to establish that the perpetrator of the felony has not yet reached a place of temporary safety after the actual commission of the crime before the killing takes place. There is substantial evidence in this record to establish the homicide in this case occurred as part of a continuous transaction from the commission of the burglary before Russell was able to obtain a position of temporary safety.

### A. Standard of Review

When we review a challenge to the sufficiency of the evidence to support a conviction we apply the substantial evidence standard. Under that standard the reviewing court examines the entire record to determine whether or not there is substantial evidence from which a reasonable jury could find beyond a reasonable doubt that the crime has been committed. In reviewing that evidence the appellate court does not make credibility determinations and

draws all reasonable inferences in favor of the trial court's decision. We do not weigh the evidence but rather ask whether there is sufficient reasonable credible evidence of solid value that would support the conviction. (*People v. Johnson* (1980) 26 Cal.3d 557, 576–578 [162 Cal.Rptr. 431, 606 P.2d 738].)

■ Section 189 provides that "[a]ll murder . . . which is committed in the perpetration of, or attempt to perpetrate . . . burglary . . . is murder of the first degree." In order for the killing to be part of the felony's "perpetration" there must be both a causal and temporal relationship between the two. Putting it differently, it must be established that the killing and the felony are part of one continuous transaction. (*People v. Cavitt* (2004) 33 Cal.4th 187, 193 [14 Cal.Rptr.3d 281, 91 P.3d 222].) In determining whether the killing is part of a continuous transaction, the courts have applied what is known as the escape doctrine, which means that included within the perpetration of an offense is the reasonable notion that the perpetrator wants to escape without apprehension. Ordinarily, when a homicide occurs during the felon's immediate flight from the crime, the killing is in the perpetration of the felony because the felony is not legally complete until the felon has found a place of temporary safety. (*People v. Young* (1992) 11 Cal.App.4th 1299, 1305 [15 Cal.Rptr.2d 30].) Whether or not the felon has reached a place of temporary safety is a matter of fact to be established by the prosecution beyond a reasonable doubt. (*People v. Ainsworth* (1988) 45 Cal.3d 984, 1016, 1025 [248 Cal.Rptr. 568, 755 P.2d 1017]; *People v. Portillo* (2003) 107 Cal.App.4th 834, 843 [132 Cal.Rptr.2d 435].)

Thus, the question presented by this appeal is whether at the time Russell crashed into the victim's car causing his death that killing was part of a continuous transaction that had not reached culmination because Russell had not found a place of "temporary safety." Here the trial court after completion of the evidence found defendant guilty of first degree murder. The only theory of first degree murder presented or available from these facts would be based upon felony murder pursuant to section 189. The trial court did not make other factual findings. Thus, our review of the record requires us to determine whether there are sufficient facts from which a reasonable inference can be drawn that Russell was continuously in flight from the burglary at the time of the death. In making that assessment we are not obliged to consider Russell's version of the facts that was obviously rejected by the trial court. Russell's version of the events following the burglary is wholly inconsistent with a finding by the trial court that Russell was in flight from the burglary at the time of the death. Accordingly, as we will discuss below, we have to determine whether reasonable inferences can be drawn from the facts to support the trial court's implied finding. Before reaching that factual analysis we have to look first to Russell's other contentions as to why the felony-murder rule should not apply in this case.

## B. The Escape Rule Does Apply to the Crime of Burglary Whether or Not Anyone Was Home at the Time That the Burglary Was Committed

Russell raises a two-pronged challenge to the question of whether or not the escape doctrine can apply to the crime of burglary. Essentially Russell argues that burglary is different than robbery and that burglary is complete upon the exit from the scene by the burglar. Russell further argues that if that is not the case the escape doctrine at least does not apply where no victim is present at the scene of the burglary.

Assuming the above contentions are not persuasive, Russell argues that even if the escape doctrine applies to burglary of a dwelling that is not occupied at the moment, it only can apply if there is an immediate pursuit from the scene of the burglary or if somebody calls the police contemporaneously with the perpetrator's departure from the scene. Respectfully, none of Russell's arguments in this regard are persuasive.

■ First of all, Russell acknowledges that case law has already established that the escape doctrine of the felony-murder rule does apply to the crime of burglary. In *People v. Fuller* (1978) 86 Cal.App.3d 618, 623–624 [150 Cal.Rptr. 515] (*Fuller*), the Court of Appeal concluded that "[a] burglary predicated on theft can be committed with equal or greater violence than a robbery, and leaving the scene with the stolen property is equally important." (*Id.* at p. 624.) The *Fuller* holding was further examined in *People v. Bodely* (1995) 32 Cal.App.4th 311, 313 [38 Cal.Rptr.2d 72] (*Bodely*). The court in *Bodely* agreed with *Fuller* that the escape rule does apply to the crime of burglary and premised its conclusion on the Supreme Court opinion in *People v. Ainsworth, supra*, 45 Cal.3d 984, 1016, holding the felony-murder rule applies when the felony and homicide are part of one continuous transaction. The court in *Bodely* noted that such conclusion was consistent with the goals of deterrence and making punishments commensurate with culpability. (*Bodely, supra*, at p. 313.)

Recognizing that case law is squarely against him Russell contends that *Bodely, supra*, 32 Cal.App.4th 311 and *Fuller, supra*, 86 Cal.App.3d 618, were wrongly decided. Russell also recognizes that the court in *People v. Thongvilay* (1998) 62 Cal.App.4th 71, 81 [72 Cal.Rptr.2d 738] (*Thongvilay*), applied the felony-murder rule to a homicide that occurred during the perpetrator's flight from an automobile burglary. Recognizing that the authority is against him on this issue, Russell argues that this court should disagree with *Bodely, Fuller* and the majority in *Thongvilay* and hold that the escape doctrine of the felony-murder rule does not apply to burglary. We decline because we believe *Fuller, Bodely* and the majority opinion in *Thongvilay* were properly decided.

We turn then to Russell's contention that even if the escape rule applies to burglary, it can only apply where there is some immediate pursuit from the scene. Russell's argument is premised principally on the dissenting opinion in *Thongvilay, supra*, 62 Cal.App.4th 71. In his dissent, Justice McKinster took the position that immediate pursuit from the scene of a felony must be literally proven because the crime of burglary, which in that case was automobile burglary, is not inherently dangerous to human life and therefore the escape doctrine should apply literally only when the burglar is chased immediately from the burglary. (*Id.* at pp. 89–93.)

No case presented by Russell takes the position that the escape doctrine can apply only when there is an immediate visible pursuit from the scene of the crime. Nor has any case taken the position that the escape doctrine would apply only if someone called the police contemporaneously with the burglar's departure from the scene. In this regard, we find the decision of the First District Court of Appeal in *People v. Johnson* (1992) 5 Cal.App.4th 552, 559–562 [7 Cal.Rptr.2d 23] (*Johnson*), to be instructive.

In *Johnson, supra*, 5 Cal.App.4th 552, 559–562, which was a robbery case, Johnson committed robberies in San Mateo. Thereafter, he drove south on Highway 101 to Highway 92 and observed that no one was following him. Johnson drove further to Highway 280 and again observed no one was chasing him. While driving north on Highway 280 Johnson observed what appeared to be a law enforcement officer in a vehicle. When the officer turned on the emergency lights, Johnson sped up and a pursuit took place. Ultimately, much like in this case, an innocent victim was killed when the victim's car was struck by the vehicle driven by Johnson. The accident causing the death of the victim occurred 30 minutes after Johnson fled the robbery scene, a distance of 22 miles between the robbery scene and where the victim was killed.

The court in *Johnson, supra*, 5 Cal.App.4th 552, 558, then addressed the question of the sufficiency of the evidence to establish that the homicide occurred during the commission of a felony. The court recited the well-established "black letter law" doctrine that one who kills another in the perpetration of one of the listed felonies is guilty of first degree murder whether the killing is intentional or unintentional (*id.* at p. 559; see *People v. Salas* (1972) 7 Cal.3d 812, 823–824 [103 Cal.Rptr. 431, 500 P.2d 7]), and that the felon is still in flight when he or she has not yet achieved a place of temporary safety (*People v. Salas*, at p. 822; *Fuller, supra*, 86 Cal.App.3d 618, 623).

The court in *Johnson* determined that the question of whether a defendant has reached a place of temporary safety is a question of fact for the jury or, in

this case, for the trial court to decide. Relying on *Fuller, supra,* 86 Cal.App.3d 618 and *People v. Kendrick* (1961) 56 Cal.2d 71, 89–90 [14 Cal.Rptr. 13, 363 P.2d 13], the court in *Johnson* concluded that while a defendant's beliefs are relevant, the ultimate question of whether the defendant has reached a place of temporary safety is an objective one to be determined by the trier of fact. (*Johnson, supra,* 5 Cal.App.4th at p. 561.)

Applying the established doctrines of felony murder, the *Johnson* court concluded that the defendant, 30 minutes away from the robbery and not having been pursued for the vast bulk of his travels, was nonetheless in flight and thus the homicide and robbery were part of a continuous transaction. (*Johnson, supra,* 5 Cal.App.4th at pp. 561–562.)

Russell seeks to distinguish *Johnson, supra,* 5 Cal.App.4th 552, because in that case a 911 call had been placed following the robbery and police had set up roadblocks in various parts of the area. We find that factual distinction utterly irrelevant to the *Johnson* court's analysis and irrelevant to our analysis of the applicability of the escape doctrine. Johnson was not aware of a 911 call, was not aware that roadblocks had been set up, and was not aware that there was any police pursuit until he was northbound on Highway 280 some 20 miles from the crime scene. An argument that the escape doctrine in that circumstance is applicable only because of calls and actions by the police of which the felon was not aware is simply unsupported factually or logically, and we decline to make that distinction in this case. Accordingly, we are satisfied that the felony-murder escape rule does apply to the felony of burglary and that it is not necessary to show the felon was either chased from the scene or that without the felon's knowledge police had been called. Therefore, we turn to the question of whether or not there is sufficient evidence in this case to show that the homicide was part of a continuous transaction, i.e., that Russell was still in flight from the burglary, not having achieved a place of temporary safety.

### C. There Is Substantial Evidence to Support the Felony Murder Conviction

In our view proper application of the substantial evidence standard of review compels the conclusion the trial court's decision should be affirmed. If we draw all reasonable inferences in favor of the decision of the trial court (*People v. Johnson, supra,* 26 Cal.3d at pp. 576–578), and accept the proposition that the trial court could have rejected Russell's self-serving testimony, we can easily determine Russell was still in flight from the burglary at the time of the victim's death.

Here the trial court could reasonably determine that at around 4:30 to 4:35 a.m. on the morning of the offense, Russell was on the porch of the Meurses'

residence. He was the "shadowy figure" observed by the neighbor. The court could infer that the loud noise made by the tailgate of Mr. Creighton's truck dropping caught Russell's attention because we know the shadowy figure looked at Creighton for three to five seconds. There is no substantial evidence that a second burglar was present at that scene. It is also reasonable to infer that Creighton left the area at around 4:40 a.m. and that when he left, the door to the neighbor's garage was closed.

Moving forward to the next sighting of Russell, we know that Russell left some of his belongings and loot from the burglary at the crime scene. Russell was seen driving the victim's car, which had been stolen from the garage, and the garage door had been left open on Russell's departure. The experienced trial judge could easily and reasonably infer that Russell being observed by Creighton beat a hasty retreat from the scene. Russell had left his belongings, fled the scene, and was observed by police four-plus miles away, only 10 to 15 minutes after *Creighton left for his class.*

Thus, we think it entirely reasonable to infer that when Russell spotted Officer Williams's marked patrol car leaving an adjacent parking lot, Russell, like the defendant in *Johnson, supra,* 5 Cal.App.4th at page 557, feared he was about to be caught and therefore fled. Russell's maniacal driving at speeds up to 100-plus miles per hour, placing innocent lives at risk, speaks loudly about Russell's fear of apprehension.

■ From these facts the trial court could find Russell had not achieved a place of temporary safety when he began his deadly flight from Officer Williams.

Before a trial court's judgment may be set aside for insufficiency of evidence to support the verdict, it must clearly appear that on no hypothesis whatever is there sufficient evidence to support it. (*People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]; *Johnson, supra,* 5 Cal.App.4th at p. 559.)

Applying the direction of our Supreme Court regarding the application of the substantial evidence standard of review, we find Russell's conviction for first degree murder is well supported in this record.

## II

### *RUSSELL'S SENTENCE IS NOT CRUEL OR UNUSUAL*

Although Russell did not raise the issue in the trial court, Russell now contends that the sentence of 25 years to life for felony murder is cruel and

unusual in violation of both the state and federal Constitutions. The Attorney General argues that we should find the issue forfeited for failure to raise it in the trial court.

Clearly Russell has forfeited the issue of cruel and unusual punishment in this case because the argument raised on appeal is not that the 25-year-to-life sentence for first degree murder is unconstitutional or that a 25-year-to-life sentence for felony murder is unconstitutional. Rather Russell contends that the sentence here is cruel and unusual because it was a "technical, tenuous at best, application of the disfavored felony murder law where a killing occurred in a car accident following a burglary of an unattended home where appellant was not pursued from the burglary." He further contends that his IQ is low and that he suffered from mental impairments and intoxication at the time of the offense.

These are the kinds of issues that should have been raised in the trial court where the trial judge, having heard all of the evidence, would be in a position to assess the validity of Russell's claims for impairment and make assessments as to their impact, if any, on the constitutionality of the sentence in this case. However, although Russell has technically forfeited the issue on appeal because he did not raise the objection below (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 27 [44 Cal.Rptr.2d 796]), we "shall reach the merits under the relevant constitutional standards, in the interest of judicial economy to prevent the inevitable ineffectiveness-of-counsel claim." (*People v. Norman* (2003) 109 Cal.App.4th 221, 229–230 [134 Cal.Rptr.2d 652].)

■ A sentence violates the state prohibition against cruel and unusual punishment (Cal. Const., art. I, §§ 6, 17) if " 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience.' " (*People v. Dillon* (1983) 34 Cal.3d 441, 478 [194 Cal.Rptr. 390, 668 P.2d 697] (*Dillon*); see also *In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].)

A sentence violates the federal Constitution if it is "grossly disproportionate" to the severity of the crime. (U.S. Const., 8th & 14th Amends.; *People v. Carmony* (2005) 127 Cal.App.4th 1066, 1076 [26 Cal.Rptr.3d 365].)

The three techniques often suggested for determining if punishment is cruel and unusual are (1) the nature of the offense and the offender with regard to the degree of danger present to society, (2) comparison of the challenged punishment with the punishment prescribed for more serious crimes in the jurisdiction, and (3) comparison of the challenged punishment with punishment for the same offense in other jurisdictions. (*In re Lynch, supra*, 8 Cal.3d at pp. 425–427.)

The nub of Russell's cruel and unusual punishment argument is that he should not have been convicted of first degree felony murder. We have,

however, already rejected his arguments about this being a "technical application" or that this is a "tenuous, at best" application of the felony-murder rule. Russell killed a human being while fleeing at exquisitely dangerous speeds during a police pursuit after he had committed a nighttime residential burglary. Respectfully, there is nothing technical or tenuous about the application of the felony-murder rule to Mr. Russell.

Russell also argues that the felony-murder rule is disfavored and relies on dicta in the case of *Fuller, supra,* 86 Cal.App.3d at pages 624 to 627, and the concurring opinion of Justice Kingsley in *Dillon, supra,* 34 Cal.3d at page 494.

■ While there have been arguments that the felony-murder rule is or should be viewed with disfavor, the fact is it remains statutorily authorized punishment in California. Further, although some courts and commentators have from time to time criticized the felony-murder rule generally on its various applications, specifically, no court has struck down the felony-murder rule and the Legislature has not seen it appropriate to modify the rule.

Specifically applied to felony murder in a flight from a burglary, the majority in *Thongvilay, supra,* 62 Cal.App.4th at pages 88 through 89, concluded that a 25-year-to-life sentence for first degree murder committed in the flight from a felony is not cruel and unusual punishment. (See also *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1198 [2 Cal.Rptr.2d 714].)

Given that we reject the major premise of Russell's argument, that the felony-murder rule should not have applied in the first place, then the sentence imposed is consistent with sentences imposed for the highest degree of homicide, which is first degree murder within Penal Code section 189.

We turn then to Russell's final argument, that he has been impaired through mental and substance problems, that he was drunk at the time of the offense and that those factors ought to mitigate. We likewise reject Russell's contentions in this regard.

We note that while Russell had been drinking and may well have had a substance abuse problem at the time of the offense, it is plain that the trial court did not believe his self-serving version of events, which would have been utterly inconsistent with the crime as it occurred. Russell has had continuous contact with law enforcement since he was a juvenile, when he had substance abuse charges as well as a true finding of first degree burglary and willful cruelty to a child. Later as an adult he was convicted of possessing a dangerous weapon, possessing controlled substances, misdemeanor and felony theft and a misdemeanor assault-type conviction prior to the crimes in this case.

Further an examination of the record in this case does not demonstrate that Russell suffers from such significant impairment as to mitigate the need for punishment consistent with the statutory offense that he committed. Nor is it productive to seek to compare Russell with the immature teenager in *Dillon, supra*, 34 Cal.3d 441, a case representing one of the rare circumstances of a reduction of a felony first-degree murder to a lesser crime based upon cruel and unusual punishment. Rather, the 30-year-old Russell with substantial criminal law contact was certainly engaged in a dissolute life of drinking and some substance abuse. He, however, elected to burglarize a residence in the nighttime and, when scared by sounds from a resident nearby, fled the burglary in a stolen vehicle, driving wildly to escape police, until he crashed into an innocent victim, killing him. Russell thereafter threatened the officer, fled and has regularly denied any significant culpability for his offense.

The record before us presents a person who has not participated in treatment, who has not benefited from his contacts with law enforcement, and has proved himself resistant to the rules and structure of a civilized society. (*People v. Em* (2009) 171 Cal.App.4th 964, 976 [90 Cal.Rptr.3d 264].) Russell has failed to show that this sentence is cruel and unusual by comparing it to punishments in California for more serious crimes, although he seeks to compare it to the lesser crimes that might have been available, which is not an appropriate analysis. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 569–570 [59 Cal.Rptr.3d 876] (*Sullivan*).)

Finally, Russell has made no attempt to compare the sentence for first degree murder with punishments prescribed by other jurisdictions for the same offense. (*Sullivan, supra*, 151 Cal.App.4th at p. 572.) In short, Russell has failed to show his 25-year-to-life sentence for first degree murder violates either the state Constitution or the Eighth Amendment of the United States Constitution. Russell has simply failed to show that his sentence shocks the conscience and violates fundamental notions of human dignity. (*Sullivan, supra*, at p. 568; *People v. Mantanez* (2002) 98 Cal.App.4th 354, 358 [119 Cal.Rptr.2d 756]; *Thongvilay, supra*, 62 Cal.App.4th at pp. 87–89.)

## DISPOSITION

The judgment is modified to add two extra days of custody credits for time Russell spent in the hospital (Sept. 5 and 6, 2006). The superior court is directed to amend the abstract of judgment accordingly and provide an amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

O'Rourke, J., concurred.

**McINTYRE, J.,** Dissenting.—I agree with the majority that the felony-murder escape rule applies to burglary. (*People v. Bodely* (1995) 32 Cal.App.4th 311, 313 [38 Cal.Rptr.2d 72]; *People v. Fuller* (1978) 86 Cal.App.3d 618, 623 [150 Cal.Rptr. 515].) However, neither the law nor the facts justify the majority's extension of the escape rule to the circumstances of this case. The escape rule has *never* been applied where, as here, no one pursued Russell immediately following the burglary, no one alerted police that a burglary had taken place or that the Meurses' Oldsmobile had been stolen, and about 15 minutes had elapsed between the time Creighton left the neighborhood and observed that the Meurses' garage door was closed and the time Officer Williams spotted the Oldsmobile nearly five miles away stopped at a red light. Russell had completed his escape from the burglary and reached a place of temporary safety. Not mentioned by the majority is the fact that police did not connect the Oldsmobile with the Meurses' burglary until well after the fatal crash. Subjectively, neither Russell nor Officer Williams had reason to believe Russell was fleeing from the scene of a burglary.

The majority relies on *People v. Johnson* (1992) 5 Cal.App.4th 552 [7 Cal.Rptr.2d 23] (*Johnson*), a case which is readily distinguishable. *Johnson* involved the face-to-face robbery of two individuals in circumstances in which the defendant would have assumed the robbery victims reported the crimes immediately. (*Id.* at p. 555.) Police did not immediately locate the defendant's stolen car, but the ensuing chase ended in the death of another driver. (*Id.* at pp. 555–556.) The *Johnson* court applied an objective test under the felony-murder escape rule to conclude that Johnson had not "actually" reached a place of temporary safety before the homicide occurred. (*Id.* at pp. 559–560.)

Here, Russell and his claimed accomplice stayed in the house as much as 12 minutes after Creighton saw a shadowy form on the porch. And because Creighton continued to load his truck in preparation to leave, there would have been little reason for a burglar like Russell to believe he had called police. Given Russell's state of intoxication, it is of little significance that Russell left a drum and duffle bag containing some of the Meurses' property at the point of entry into the house. Based on the lapse of time and distance, Russell had actually reached a place of temporary safety as a matter of law under the objective test set forth in *Johnson*. (*Johnson, supra,* 5 Cal.App.4th at p. 561.) Accordingly, the burglary and homicide were not part of one continuous transaction for purposes of the felony-murder rule. (*People v. Prince* (2007) 40 Cal.4th 1179, 1259 [57 Cal.Rptr.3d 543, 156 P.3d 1015].)

There is certainly sufficient evidence to form the basis of a second degree murder conviction given Russell's conduct after he saw Officer Williams, but I conclude the extension of the felony-murder escape rule to the situation we

have here is unwarranted. As tragic and unnecessary as Rodrigo Vega's death was, the degree of culpability present here does not comport with first degree murder. I would reverse Russell's conviction of first degree felony-murder in count 1.

A petition for a rehearing was denied September 9, 2010. McIntyre, J., was of the opinion that the petition should be granted. Appellant's petition for review by the Supreme Court was denied December 1, 2010, S186956.