Filed 8/25/22  P. v. Russell CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080242 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN217314) |
| KARL JOSEPH RUSSELL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Pamela M. Parker, Judge.  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

This is an appeal from a second, successive petition for resentencing under Penal Code[1] section 1172.6.[2]  The undisputed record shows Karl

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

Joseph Russell was the sole perpetrator of the homicide and was the actual killer.

In 2008, Russell was convicted of first degree murder (§ 187, subd. (a); count 1); evading an officer causing death (Veh. Code, § 2800.3; count 2); residential burglary (§ 459; count 3); and vehicle theft (Veh. Code, § 10851, subd. (a); count 4). The court found true a weapon enhancement under section 12022, subdivision (b) and found he personally caused great bodily injury (§ 12022.7, subd. (a)).

Russell was sentenced to an indeterminate term of 26 years to life in prison. Russell appealed and this court affirmed the judgment in a published opinion. (*People v. Russell* (2010) 187 Cal.App.4th 981.)

In October 2020, the trial court appointed counsel and denied Russell's first petition for resentencing under section 1172.6. Russell appealed. On March 22, 2021, this court affirmed the order denying the first petition.

In January 2022, Russell filed an essentially identical second petition for resentencing.

The trial court denied Russell's request for counsel since the petition is a repeat of the earlier petition for which Russell received counsel. The court also found the record of conviction established Russell was the actual killer and was not eligible for resentencing.

Russell filed a timely notice of appeal.

Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) indicating counsel has not been able to identify any

---

2     Russell brought his motion under former section 1170.95, which was renumbered as section 1172.6 without substantive change on June 30, 2022. (See Stats. 2022, ch. 58 (Assem. Bill No. 200), § 10, eff. June 30, 2022.) As such, we refer to the subject statute by its current number throughout this opinion.

2

arguable issues for reversal on appeal.  Counsel asks the court to review the record for error as mandated by *Wende*.  We offered Russell the opportunity to file his own brief on appeal, but he has not responded.

STATEMENT OF FACTS

Our opinion in *People v. Russell, supra,* 187 Cal.App.4th 981 contains a statement of fact which would provide background for this opinion.  We will adopt the copy contained in the appellant's opening brief for convenience.

"About 4:30 or 4:35 a.m. on September 5, 2006, Ryan Creighton was outside of his house on North Tremont Street in Oceanside.  Creighton was loading his truck in order to go to a 5:30 a.m. fire academy class at Palomar College.  Creighton observed movement taking place on the porch of his neighbors across the street, Klaas and Golda Meurs.  Creighton saw a shadowy figure moving quickly on the porch of the Meurses' residence.  In the process of loading his truck Creighton made a loud sound when he dropped the tailgate of the truck.  Creighton noted then that the quickly moving figure stopped, looked in his direction for three to five seconds, then bent over, turned around and went back inside the Meurses' residence.  Thereafter, Creighton observed a flashlight sweep in the interior of the Meurses' house.  Creighton then noticed what he thought were lights in the upper story bedroom of the Meurses' residence and therefore decided he did not need to call the police.

"Creighton continued to load his truck and then drove away for his training class.  He estimated based upon his normal schedule that he would have left about 4:40 a.m.  When Creighton left his house, the neighbors' garage door was still down in the normal position.

3

"Investigation later determined that the Meurs family was away at the time of these events. They had left their white Oldsmobile in their closed garage.

"Since Russell does not challenge the sufficiency of the evidence to prove the residential burglary, the vehicle theft or his flight from police causing death, we will truncate the discussion of all the facts surrounding those events and deal only with those necessary to provide a foundation for the discussion of the issue of sufficiency of the evidence to prove felony murder.

"The investigation revealed that the Meurses' home had been burglarized, that items were taken, including the Meurses' white Oldsmobile from the garage. The garage door remained open when the burglar left with the Oldsmobile.

"Russell left a duffel bag close to the sliding glass door of the Meurses' residence. Items of Russell's personal property and property taken from the residence were located in that duffel bag.

"About 4:52 a.m., approximately 12 minutes after Creighton had left the Meurses' home, where the garage door remained closed, Carlsbad Police Sergeant Mickey Williams observed the Meurses' white Oldsmobile stopped at a red light at the intersection of Plaza Drive and El Camino Real in the City of Carlsbad. Russell was driving the Oldsmobile. The location in Carlsbad is around four miles from the area in Oceanside where Russell had been last seen.

"At the time Officer Williams was likely observed by Russell, Williams was driving a marked patrol car, was in uniform and was about to exit the parking lot near the intersection where Russell was stopped at a red light.

"Before the light changed, Williams observed Russell rapidly accelerate, driving through the red light and across the intersection. The officer could hear the Oldsmobile accelerating at a rapid rate proceeding southbound on El Camino Real. The police officer activated the patrol car's emergency overhead lights and pursued the white Oldsmobile. The officer estimated that at times the Oldsmobile was traveling 70 to 80 miles per hour in a 35-mile-per-hour zone.

"The chase continued at high speeds with the white Oldsmobile running red lights, driving erratically, and weaving in and out of traffic. At one point, Russell drove 60 to 80 miles per hour down the center median of a shopping area designated for left turns. At one point the Oldsmobile reached speeds of 100-plus miles per hour.

"Ultimately, with the police officer remaining in pursuit of Russell, the stolen Oldsmobile crashed into the front passenger side of a pickup truck driven by the victim, Rodrigo Vega. Vega was killed as a result of that collision. When Officer Williams approached Russell at the crash scene, Russell threatened the officer, stating that he had a gun, and then ran away. Carlsbad police pursued Russell and found him crouching in the corner next to an office building.

"Police officers recovered items of property stolen in the burglary in Russell's pants pockets and from the Oldsmobile. They also found a silver flashlight under the passenger seat of the car. A blood sample taken from Russell about 6:07 a.m. showed he had a blood alcohol level of 0.12 percent. A later blood sample showed a blood-alcohol level of 0.11 percent. A forensic criminalist testified that at the time of the fatal crash, Russell likely had a blood-alcohol level of 0.14 percent.

"Russell testified in his own defense and testified to drinking prior to the burglary. He said he met his friend Kurt McFarlane at the Rusty Spur bar in Oceanside about 9:30 p.m. He testified about entering the Meurses' residence with McFarlane and acknowledged leaving a bag outside the door of the residence. He said they were in the house for about an hour and that McFarlane was the one seen on the porch.

"Russell testified that after they left the residence he dropped McFarlane off at an area near the beach where McFarlane often slept on a boat several blocks away. Russell said he then drove around to see if he could 'kick it with some friends,' but did not find anyone and got lost in the Oceanside area. He did not remember driving in the manner in which Officer Williams described his driving and only remembered he was trying to find a place to sleep."

## DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief and asks the court to review the record for error. To assist the court in its review, and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*), counsel has identified the following possible issues that were considered in evaluating the potential merits of this appeal:

1. Whether appellate review under *Wende* and *Anders* will be available in this appeal.

2. Should the appellate court conduct an independent review of the record in this case.

3. Whether the trial court erred in denying Russell's petition for resentencing.

6

We have reviewed the entire record as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Russell on this appeal.

DISPOSITION

The order denying Russell's petition for resentencing under section 1172.6 is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.