Filed 4/30/14  P. v. Anaya CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071288 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F07667) |
| v. | |
| JOEL ANAYA, | |
| Defendant and Appellant. | |

Defendant Joey Anaya, who was 18 years old at the time of his crimes, was convicted of two counts of attempted murder and other crimes connected to his gang activity.  Sentenced to long determinate and indeterminate terms in state prison, he appeals.  He contends that (1) the prosecutor committed misconduct in commenting on the defense's failure to produce a witness and (2) his sentence constitutes cruel and unusual punishment because of his age.  We conclude that the prosecutor did not commit misconduct and that his sentence was not cruel and unusual because he was an adult when he committed his crimes.

1

FACTS

Defendant, who is a Norteño gang member, committed his crimes during two separate incidents: one at Harvey Park in Galt on November 17, 2010, and the other outside Greenhaven Liquor in Sacramento on October 22, 2011, while he was out on bail on the Harvey Park crimes.

*Harvey Park*

A group of Sureños and others not affiliated with any gang were socializing at Harvey Park when defendant and some of his fellow Norteño gang members approached. Defendant had a gun in his hand, wrapped in a red bandanna. As defendant approached, he took off his shirt. He fired the gun about five times in the direction of the Sureños. After defendant stopped firing, either because the gun jammed or he was out of bullets, the Sureños chased the Norteños away.

Just before the shooting, Deanna Evans was at Harvey Park with four children. She saw a group of men aggressively approaching a group that was already in the park. Thinking that there would be trouble, Evans frantically loaded the children into her car, which was in the middle of the two groups. She saw a man with a red bandanna over his hand and heard four gunshots. She saw no other weapon among the two groups of men. After hearing the gunshots, Evans was able to drive away.

The main defense with respect to the Harvey Park incident was that the Sureños had knives and that defendant fired the gun in self-defense. Zackery Ricardos, one of the Norteños with defendant at the time, told a detective that the Sureños "pulled out a knife" and chased the Norteños. Called as a witness at trial, Ricardos claimed not to remember the incident or talking to a detective, but he was impeached with his prior inconsistent statements.

2

*Greenhaven Liquor*

D'Angelo Gutierrez dropped out of the Norteño gang and changed his life. As he was leaving Greenhaven Liquor, he was attacked by three men, two of whom could be identified by surveillance camera footage of the attack as defendant and his brother Jonathan. The footage was shown to the jury. The assailants punched Gutierrez in the face and, after he fell to the ground, kicked and punched him numerous times all over the body until he lost consciousness. The assailants took Gutierrez's shirt and shoes and left the scene in a car registered to Jonathan Anaya's girlfriend.

PROCEDURE

A jury convicted defendant of attempted murder of and assault with a firearm on Jesus Calderon and Manuel Barriga (two of the Sureños at Harvey Park). (Pen. Code, §§ 664, 187, subd. (a), 245, subd. (a)(2) (counts one through four).)[1] The jury also convicted defendant of second degree robbery of and assault by means of force likely to cause great bodily injury on D'Angelo Gutierrez. (§§ 211, 245, subd. (a)(1) (counts five & six).) The jury found that (1) the attempted murders were committed willfully, deliberately, and with premeditation (§ 664, subd. (a)) and involved personal and intentional discharge of a firearm (§ 12022.53, subd. (c)), (2) the assaults with a firearm involved personal use of a firearm (§ 12022.5, subd. (a)), (3) the robbery and assault by means of force likely to cause great bodily injury were committed while defendant was on bail (§ 12022.1), and all of the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

The trial court sentenced defendant to two consecutive indeterminate terms of 15 years to life for the attempted murders (because they were committed for the benefit of a

---

[1]     Subsequent undesignated references to sections are to the Penal Code.

3

criminal street gang (§ 186.22, subd. (b)(5)), with an additional determinate term of 40 years (20 years for each attempted murder) for the personal and intentional firearm discharge enhancements. The court also sentenced defendant to a consecutive determinate term of 15 years, consisting of three years for second degree burglary and an additional 12 years total for the gang and firearm-use enhancements. Terms for the remaining crimes were stayed under section 654. In total, the court sentenced defendant to a determinate term of 55 years, followed by an indeterminate term of 30 years to life.

## DISCUSSION

### I

### *Prosecutor's Comment*

Defendant contends that the prosecutor committed misconduct by commenting on the defense's failure to call a witness the prosecutor knew was unavailable. We conclude that the comment was not improper because it would have been logical for the defense to call the witness and it was not established that the witness was unavailable. And, in any event, even if the comment was improper, it was harmless beyond a reasonable doubt.

A.     *Background*

During pretrial proceedings and in connection with a defense motion for a continuance, defense counsel informed the trial court that a defense witness could not be found. Counsel believed, from reviewing a recording of a police interview with Luis Salinas, that Salinas, one of defendant's fellow Norteño gang members, would testify that the Sureños at Harvey Park appeared unexpectedly and were wielding knives. However, when questioned by the court about the defense's lack of due diligence in getting Salinas to testify, counsel said that he had not been aware of how valuable Salinas's testimony would be. Counsel also said that Salinas "may now have fled to Mexico, which is what the information I have is." The court informed counsel that it could not grant a continuance without a showing that Salinas might be located.

4

Salinas did not testify at trial. However, during cross-examination of the prosecution's gang expert Detective Kyle Slater, defense counsel asked whether the detective had considered statements by Salinas when concluding that the Sureños did not provoke defendant and his fellow gang members at Harvey Park. Detective Slater responded that he had considered Salinas's statement. Defense counsel asked Detective Slater whether Salinas's statement that three men with knives had approached Salinas's group was an indication that the initial aggressors were the three men with knives. Defense counsel also reviewed with the detective Salinas's statement that Salinas, upon seeing the men with knives, began to flee and saw defendant raise an object in his right hand and heard gunshots.

During Detective Slater's testimony, the trial court instructed the jury that Salinas's statement was not to be considered for the truth of the matter, but could be used only to help assess Detective Slater's testimony.

In his closing argument, defense counsel criticized Detective Slater for discounting Salinas's statement when concluding that defendant and his fellow Norteño gang members were the aggressors, not the Sureños. In his argument, counsel reviewed Salinas's statement at length and completed the comment, saying, "So why did . . . Detective Slater . . . discount this statement in forming that opinion?" Defense counsel then reviewed other evidence that supported Salinas's statement that the Sureños were the aggressors.

In rebuttal, the prosecutor reminded the jury that Salinas's statement was not admissible for the truth of the matter. And the prosecutor added: "If counsel wanted that to be evidence, he could have called Luis Salinas to the witness stand." Defense counsel objected that the defense was "[n]ot required to call witnesses." But the court overruled the objection.

5

The prosecutor continued: "If [defense counsel] wanted that evidence, he could have called that witness. I haven't any obligation. Haven't any duty to. [¶] But just like I had to call a bunch of reluctant witnesses, maybe Luis Salinas didn't want to be here. None of the witnesses wanted to be here. He could have done that if that's how he wanted to [] produce that evidence and put that evidence before you, but that wasn't done. [¶] So that evidence was introduced for the very limited purpose of testing Detective Slater's opinion in relationship to this being a gang related activity."

B.     *Analysis*

Defendant contends that the prosecutor committed misconduct, violating defendant's state and federal rights to due process and to remain silent, by commenting on the defense's failure to call a witness who was unavailable. Citing *People v. Frohner* (1976) 65 Cal.App.3d 94, he claims that "a prosecutor may not comment on the defense's failure to call a witness the prosecutor knows is unavailable."

It is error for a prosecutor to comment directly or indirectly upon a defendant's failure to testify in his own defense. (*Griffin v. California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 110]; *People v. Medina* (1995) 11 Cal.4th 694, 755.) The *Griffin* rule, however, does not preclude comments on the state of the evidence, or on the defendant's failure to introduce material evidence or call logical witnesses. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1339; *People v. Medina, supra*, at p. 755.)

In *People v. Frohner, supra,* 65 Cal.App.3d 94, on which defendant relies, the court found that the prosecutor committed misconduct when he allowed the jury to infer that the defendant purposely failed to call a witness when in fact the prosecutor had a duty to make reasonable efforts to produce the witness and failed to fulfill that duty. (*Id*. at p. 109.) Under these circumstances, the court found it "inexcusable" that the prosecutor argued to the jury that the defense failed to produce the witness. Coupled with

6

the prosecution's own failure to produce the witness, the comment substantially prejudiced the defendant. (*Ibid*.)

Here, on the other hand, there is no suggestion that the prosecution failed in a duty to procure Salinas as a witness. While there was some indication that efforts by a previous defense attorney had failed to produce Salinas and trial counsel had information that Salinas "may" have fled to Mexico, it was far from established that the defense could not have produced Salinas as a witness through reasonably diligent efforts. (See Evid. Code, § 240, subd. (a)(5) [requiring reasonable diligence before witness treated as unavailable].) Therefore, the prosecutor's comment was permissible because it would have been logical for the defense to present testimony from a witness who apparently would have testified (or been impeached with prior inconsistent statements) that the Sureños at Harvey Park approached defendant and his fellow gang members with knives.

In any event, even if the comment by the prosecutor was improper, it was harmless beyond a reasonable doubt. The jury was properly instructed that it could consider Salinas's hearsay statements only for the purpose of evaluating Detective Slater's expert testimony, and the focus of the prosecutor's comment was that the jury must follow the court's instruction, even though defense counsel discussed Salinas's statement at length in cross-examining Detective Slater and in closing argument. The jury could not rely on Salinas's statement to conclude that the Sureños were the aggressors. In light of the evidence that defendant was the initial aggressor, bearing a handgun, it is not reasonable to conclude that the prosecutor's additional comment that the defense did not produce Salinas as a witness affected the verdicts in any way.

Given this conclusion, we need not consider the Attorney General's argument that defendant did not preserve the constitutional objection for appeal or defendant's argument that, if defense counsel failed to preserve the objection, defendant's right to counsel was violated.

## II

### *Cruel and Unusual Punishment*

Defendant contends that his sentence constitutes cruel and unusual punishment under the Eighth Amendment of the federal Constitution because he was only 18 years old when he committed the offenses and the minimum term before he is eligible for parole exceeds his natural life expectancy. The contention is without merit because defendant was an adult when he committed the offenses.[2]

"A sentence violates the federal Constitution if it is 'grossly disproportionate' to the severity of the crime. [Citations.]" (*People v. Russell* (2010) 187 Cal.App.4th 981, 993.)

In support of his contention that his sentence is cruel and unusual, defendant relies on cases in which the defendant was a juvenile when he committed the crimes. He concludes that "[t]he functional equivalent of a mandatory life sentence for an 18-year-old does not permit consideration of factors relevant to youth and is therefore unconstitutional under the Eighth Amendment . . . ." The contention fails because those cases do not support an argument that a sentence imposed for crimes committed when the defendant was an adult is cruel and unusual. (*People v. Argeta* (2012) 210 Cal.App.4th 1478 (*Argeta*).)

In *People v. Caballero* (2012) 55 Cal.4th 262, our Supreme Court held that sentencing a juvenile who commits a nonhomicide offense to a de facto sentence of life

---

[2]    Defendant also contends that trial counsel was constitutionally deficient if counsel's objection that the sentence was "unwarranted" did not preserve for appeal the issue of whether the sentence is cruel and unusual. We reject the contention because the sentence was not cruel and unusual and, therefore, counsel's failure to raise the issue did not cause prejudice to defendant. (See *People v. Lawley* (2002) 27 Cal.4th 102, 133, fn. 9 [prejudice necessary to ineffective assistance of counsel claim].)

without parole is categorically cruel and unusual punishment.  (*Id*. at p. 268; see also *Miller v. Alabama* (2012) __ U.S. __ [183 L.Ed.2d 407]; *Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825].)  *Caballero* is distinguishable because defendant here was not a juvenile when he committed his crimes.  This distinguishing factor was addressed in *Argeta*, which stated: "Relying on *Graham, . . . Miller,* and *Caballero*, Argeta contends his sentence is categorically cruel and/or unusual.  Argeta was 18 and was convicted of first degree murder as a principal.  His counsel argues that since the crime was committed only five months after Argeta's 18th birthday the rationale applicable to the sentencing of juveniles should apply to him.  We do not agree.  These arguments regarding sentencing have been made in the past, and while '[d]rawing the line at 18 years of age is subject . . . to the objections always raised against categorical rules . . . [, it] is the point where society draws the line for many purposes between childhood and adulthood.'  (*Roper v. Simmons* (2005) 543 U.S. 551, 574 [161 L.Ed.2d 1]; see *Graham, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2016].)  Making an exception for a defendant who committed a crime just five months past his 18th birthday opens the door for the next defendant who is only six months into adulthood.  Such arguments would have no logical end, and so a line must be drawn at some point.  We respect the line our society has drawn and which the United States Supreme Court has relied on for sentencing purposes, and conclude Argeta's sentence is not cruel and/or unusual under *Graham, Miller,* or *Caballero*." (*Argeta, supra,* 210 Cal.App.4th at p. 1482.)

In addition to the fact that defendant was an adult when he committed his crimes, the crimes justified severe punishment.  He engaged in dangerous, assaultive gang conduct.  He endangered not just other gang members but also innocent bystanders, including children, when he attempted to murder the two Sureño gang members at Harvey Park.  And after he got out on bail for the Harvey Park shootings, he went right back to his violent ways, participating in a brutal beating.  The combination of two premeditated attempted murders on behalf of a gang, using a firearm, along with robbery

9

and assault causing great bodily injury, again to promote his gang, justified the substantial sentence permitted by statute. The sentence was not disproportionate, much less grossly disproportionate, to the severity of his crimes.

DISPOSITION

The judgment is affirmed.


                                        NICHOLSON        , J.


We concur:



     BLEASE          , Acting P. J.



     MAURO          , J.

10