Filed 9/22/15  P. v. Rabago CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RODOLFO RABAGO,<br><br>    Defendant and Appellant. | B260313<br><br>(Los Angeles County<br>Super. Ct. No. KA104614) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas Falls, Judge.  Affirmed.

Jennifer Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A jury convicted Rodolfo Rabago of kidnapping victim Cecile Bacani for the purpose of carjacking (Pen. Code, § 209.5, subd. (a))[1] and found true he personally used a deadly and dangerous weapon (a BB gun) (§ 12022, subd. (b)(2)).  Appellant admitted allegations he suffered three prior strike convictions (§§ 667, subds. (b)-(j), 1170.12), two prior serious felony convictions (§ 667, subd. (a)(1)), and one prior prison term (§ 667.5, subd. (b)).  The court denied his motion to strike one of his prior convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) and sentenced him to 36 years to life, consisting of 25 years to life under the "Three Strikes" law, plus one year for the deadly weapon enhancement, plus 10 years for the two prior convictions pursuant to section 667, subdivision (a)(1).  On appeal, he contends (1) the trial court abused its discretion in refusing to strike two of his prior convictions pursuant to *Romero*; (2) his sentence constituted cruel and/or unusual punishment under the federal and state constitutions; and (3) the court misunderstood it had no discretion to strike his one-year sentence for the deadly weapon enhancement.  We affirm.

## STATEMENT OF FACTS

At approximately 2:00 p.m. on February 6, 2014, Bacani exited a TJ Maxx store in Walnut and entered her car.  After she shut the door, appellant approached the driver's side and pointed a gun at her.  She tried to lock the door and keep it closed, but he pulled it open, climbed over her, and got into the passenger seat.  He kept the gun pointed at her and tugged on her purse, but she held onto it.  She screamed "help" and honked the horn.  Appellant told her to drive, so she did.  At appellant's direction, she drove in circles around Walnut, then headed west toward Los Angeles.  At some point he told her to take him to "Pico."  Bacani drove for an hour and a half, and appellant had the gun pointed at her for about two-thirds of that time.  They ended up in downtown Los Angeles.  When Bacani stopped at a stoplight, she noticed two marked police cars.  She grabbed her purse and ran out of the car toward them.

---

[1]     Undesignated statutory citations are to the Penal Code unless otherwise noted.

2

Los Angeles Police Officers Jason Janata and Cesar Mendoza were stopped at that stoplight at the intersection of First and Spring Streets when they saw Bacani jump out of her car and scream for help. They saw appellant try to move into the driver's seat from the passenger seat. The officers exited their car with weapons drawn and ordered appellant out of the car and onto the ground. Appellant sat in the car for a few seconds and attempted to put the car in gear, then complied, at which point the officers detained him. He was wearing white cotton gloves. As Officer Mendoza walked him to the sidewalk, he said, "I wasn't going to hurt her, man. I just wanted her to take me somewhere." He also said, "It's just a BB gun, man. It's under the passenger seat." Officer Mendoza checked the car and found a loaded black BB gun in a black bag in the passenger side floorboard. It resembled a real black handgun and did not have a bright red or orange tip.

Deputy Sheriff Yvonne Shannon was assigned to the Walnut station and went to Los Angeles later that day to take custody of appellant. While they were inside her car, she advised him of his rights, which he waived, and he told her what happened. He said he was waiting outside TJ Maxx on a bench when he saw Bacani approach. He asked for a ride from her and she ignored him. When she came out of the store, he followed her to her car, took out the BB gun, forced his way into her car, and ordered her to drive away. They drove to Los Angeles, at which point she jumped out of the car yelling for help when she saw police cars. He explained he wanted to get to Los Angeles, but he did not know how to get there. He said he knew what he was doing was wrong.

**DISCUSSION**

*1.* **Romero** *Motion*

Appellant admitted he suffered three prior convictions that constituted strikes under the Three Strikes law: a burglary conviction in 1999 (§ 459); and kidnapping and attempted carjacking convictions in the same case in 2000 (§§ 207, 664/215). As part of his written sentencing memorandum, appellant requested the court exercise its discretion and strike his prior convictions pursuant to *Romero*, citing the following circumstances: he had a history of drug use and drug convictions; he was homeless and uneducated; he

had been victimized in prison and attempted suicide numerous times; he was the victim of sexual abuse by family members when he was young; for the current offense, he did not harm Bacani and his actions were impulsive; and he was remorseful and did not want to go to trial, but his counsel was unable to work out a plea deal and an open plea was not an option.

The prosecution opposed the motion, arguing the violent nature of appellant's current conviction, his criminal history, and his violent character placed him within the terms and spirit of the Three Strikes law. In particular, the prosecution emphasized the following circumstances of appellant's prior convictions for kidnapping and attempted carjacking (which appellant has not disputed):

"On January 18, 2000, victim, Jose Roberto Diaz was parked in a shopping center parking lot when he was approached by the defendant. The defendant produced a black handgun and ordered the victim to get in the vehicle. Defendant then got into the passenger seat and ordered the victim to drive, giving him directions as they went. Defendant had victim pull over in a parking lot, was ordered to lay face down on the ground, where defendant robbed him of his money and jewelry. He then ordered the victim, again at gunpoint, to return to the driver's seat stating 'come on, I have places to go.' He then ordered victim to drive him around, giving him directions to various different places, driving around in circles at times. Defendant forced the victim to drive him around for approximately 4 hours before exiting the vehicle. Victim Diaz drove directly to the police station.

"On the same night, as victim Diaz was reporting the incident to police, detectives learned that another similar incident had just been reported. In that incident, defendant approached victim Siliberto Gomez and asked for a ride. The victim agreed. Defendant got into the car and gave the victim directions. Suddenly, defendant produced a handgun, placed it against the victim's neck and stated 'this is as far as you go.' He then reached across the victim, and tried to open the driver side door, attempting to push the victim out of the vehicle. Scared for his life, the victim recalled seeing police cars parked nearby,

4

and drove straight towards them. Defendant was apprehended and charged with both incidents."

At the sentencing hearing, the court indicated it had considered the parties' written submissions and declined to strike any of appellant's prior convictions. It reasoned as follows:

"The fact of the matter is, Mr. Rabago, you have been convicted of three separate extremely violent offenses. You have now picked up another kidnapping and kidnapping for purposes of carjacking, and that is, depriving the owner of the vehicle even temporarily.

"The thing that bothers me the most is I believe one of the statements you made to the police was the fact that you just needed a ride down to L.A. You didn't know any other way to get there. I frankly can't conceive of that. I mean, you could have gotten on a bus and not paid for fair [*sic*]. You could have gotten on a train and not paid for fair [*sic*]. They do it every day. They catch them every once in a while, but then you end up with a misdemeanor down in L.A. and not a third strike offense. I don't understand that.

"I can tell you, however, that I do not believe that you meet the spirit of *Romero* and its progeny. So I do want the record to reflect that I have considered *Romero*. I have considered its progeny. I have taken a look at aggravating and mitigating factors. Since there is a crossover, let me be clear.

"In your moving papers, you describe the crime as sophisticated, and that would be in your motion to—motion—sentencing memorandum. I disagree with you on that. I really didn't see this as a very sophisticated crime. Unfortunately, what I do see this as is a crime of somebody who knows no other way of doing things other than using force and violence, but planned, I don't think so.

"I mean, granted, look, granted he sat outside. He tried to talk to this woman. According to everything we have, she ignored him, which was her right. She went in the store, came out, and he carjacked her, got in her car, made her drive all over—not extremely sophisticated.

"I'm not sure he knew exactly where to go.  He simply said to go to Pico.  This poor woman thought he was talking about Pico Rivera instead of the Pico district in L.A. From there we do the car ride all over El Monte or I think it was Baldwin Park.  I can't recall.  I'm not sure that detail is important.

"I don't find it to be sophisticated, but the other factors I think is [*sic*] true. Frankly, the prospects, your age[2] and the prospects of you ever leading a straight life are slim and none.

"The bottom line is I have considered all the factors.  I have paid a lot of attention. [Defense counsel] has done a wonderful job for you and has fought on your behalf, but— and the court recognizes its discretion, but I am declining to use it.  I'm denying the motion to strike."[3]

Under *Romero*, a trial court retains discretion to strike or vacate prior felony conviction allegations under the Three Strikes law in furtherance of justice.  (*People v. Williams* (1998) 17 Cal.4th 148, 158.)  In exercising this discretion, the court must consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*Id.* at p. 161.)  We review the trial court's refusal to strike a prior strike conviction for abuse of discretion.  (*People v.*

---

**2**  Appellant was 34 years old at the time of his sentencing.

**3**  At the hearing, the court raised the question of whether appellant's two convictions in the same case in 2000 should be treated as one strike or two.  The court never directly answered that question before refusing to strike any of the prior convictions.  We note they constituted separate strikes because they involved separate incidents and separate victims.  (*People v. Rusconi* (2015) 236 Cal.App.4th 273, 275 [two manslaughter convictions involving two victims in one incident constituted two strikes].) That made appellant's current conviction a *fourth* strike, so the court would have had to strike at least two of his prior convictions to affect his sentence under the Three Strikes law.  Because we find the court did not abuse its discretion in refusing to strike any of appellant's prior convictions, we need not address this issue further.

*Carmony* (2004) 33 Cal.4th 367, 376.) A trial court "does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

The trial court acted well within its discretion in refusing to strike any of appellant's prior convictions. The court understood its discretion and carefully considered appellant's arguments. Notwithstanding the factors raised by appellant, the circumstances surrounding the prior and current convictions and appellant's bleak prospects for the future placed him well within both the letter and the spirit of the Three Strikes law. The trial court properly viewed appellant as a career criminal. He was convicted of burglary in 1999. While on probation for that offense, he was convicted of kidnapping and attempted carjacking in 2000. He was sentenced to 15 years 10 months and paroled in September 2012. Not two years later, he committed the instant offense, which was nearly identical to his 2000 kidnapping conviction: both involved appellant approaching the victim in a parking lot, forcing the victim into the car at gunpoint, and forcing the victim to drive him around for hours (sometimes in circles). The 2000 attempted carjacking conviction was also similar: he forced the victim to drive around at gunpoint and tried to push the victim out of the car, stopping only because the victim spotted police cars nearby. In all three instances, his actions created a high risk of harm to the victims involved—in the 2000 kidnapping he held the victim at gunpoint; in the 2000 attempted carjacking he tried to push the victim out of the car; and in the current case, Bacani was forced to exit her car and run to safety in the middle of a busy street in downtown Los Angeles. We agree with the trial court that, given appellant's age and criminal history, his prospects of leading a law-biding life are virtually nonexistent.

Appellant contends the trial court abused its discretion by not expressly considering his age and the lengthy sentence he still would have received in a two-strike case. (See *People v. Garcia* (1999) 20 Cal.4th 490, 500 ["[A] defendant's sentence is also a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences."]; *People v.*

7

*Bishop* (1997) 56 Cal.App.4th 1245, 1251 ["The length of the sentence to be imposed also presents an open-ended inquiry because, when considered in conjunction with the defendant's age, it presents the trial court with an opportunity to evaluate factors such as how long the state maintains an interest in keeping the defendant as a public charge and after what period of incarceration he is no longer likely to offend again."].)  Even though the court did not expressly discuss appellant's age in conjunction with the lesser sentence he could have received if the court struck two of his prior convictions, the prosecution set out the maximum sentence in its sentencing memorandum and the court expressly mentioned appellant's age, demonstrating the court implicitly considered and rejected a lesser sentence.  (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary."].)

Appellant "appears to be 'an exemplar of the "revolving door" career criminal to whom the Three Strikes law is addressed.' [Citation.]  As such, the court's decision not to strike [appellant's] priors is neither irrational nor arbitrary and does not constitute an abuse of discretion." (*People v. Carmony, supra*, 33 Cal.4th at p. 379.)

## 2.  *Cruel and/or Unusual Punishment*

Appellant contends his 36-years-to-life sentence violates the ban on cruel and unusual punishment in the Eight Amendment to the United States Constitution and the corresponding ban on cruel or unusual punishment in article 1, section 17 of the California Constitution.  Respondent argues appellant forfeited this argument because he failed to raise it in the trial court.  We agree.  (*People v. Russell* (2010) 187 Cal.App.4th 981, 993 (*Russell*); *People v. Norman* (2003) 109 Cal.App.4th 221, 229.)  But "we 'shall reach the merits under the relevant constitutional standards, in the interest of judicial economy to prevent the inevitable ineffectiveness-of-counsel claim,'" which appellant has raised here in his reply brief.  (*Russell, supra*, at p. 993; see *Norman, supra*, at p. 230.)

Under both the state and federal constitutions, a sentence may be cruel and/or unusual if it is grossly disproportionate to the crime committed.  (*Lockyer v. Andrade*

(2003) 538 U.S. 63, 73 (*Andrade*); *People v. Dillon* (1983) 34 Cal.3d 441, 478.)  Under federal law, the precise contours of the disproportionality question are unclear, but disproportionality invalidates a sentence only in the "'exceedingly rare' and 'extreme' case." (*Andrade, supra*, at p. 73.)  Under state law, a sentence is cruel or unusual if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) "The three techniques often suggested for determining if punishment is cruel and unusual are (1) the nature of the offense and the offender with regard to the degree of danger present to society, (2) comparison of the challenged punishment with the punishment prescribed for more serious crimes in the jurisdiction, and (3) comparison of the challenged punishment with punishment for the same offense in other jurisdictions." (*Russell, supra*, 187 Cal.App.4th at p. 993, citing *Lynch, supra*, at pp. 425-427.)

Appellant offers no analysis of how these "techniques" apply to his sentence, other than to assert his "sentence of 36 years to life in prison for a crime in which no one was injured" offends constitutional standards "in light of all the applicable factors." We likewise limit our analysis to pointing out the circumstances discussed above—including appellant's violent criminal history and the potential for violence and harm in the instant case—make this case far from one that "shocks the conscience" under the California Constitution. (See *People v. Gray* (1998) 66 Cal.App.4th 973, 992-993 [rejecting proportionality challenge to 30-years-to-life sentence under Three Strikes law for attempted carjacking and attempted kidnapping].) Likewise, this was not one of the "'exceedingly rare' and 'extreme' case[s]" that violates the United States Constitution. (*Andrade, supra*, 538 U.S. at p. 73; see *Rummel v. Estelle* (1980) 445 U.S. 263, 265-266, 285 [rejecting challenge to life sentence for current conviction of obtaining $120.75 by false pretenses and prior convictions for passing a forged check for $28.36 and using fraudulent credit card to obtain $80 of goods or services].)

### 3. *Deadly Weapon Enhancement*

Near the end of the court's pronouncement of appellant's sentence, the court imposed the one-year low term for the section 12022, subdivision (b)(2) deadly weapon

enhancement[4] as follows: "I am going to impose the low term on the [section] 12022(b)(2) [(deadly weapon enhancement)]. It was a BB gun. He completely cooperated with the police. He didn't give them any trouble whatsoever. Granted, she did not know the difference nor would she based on the gun. She was scared to death, and she was frightened when she was in court. [¶] However, I do believe that the sentence that's given is appropriate in this case, *and that's the only discretionary call I have in sentencing*. I understand that. [¶] That's a total term of 36 years to life in state prison." (Italics added.) Appellant argues the italicized language demonstrates the trial court did not understand it had discretion to strike the section 12022, subdivision (b)(2) deadly weapon enhancement entirely, rather than impose the one-year low term. He contends the court's sentencing decision was therefore an abuse of discretion and violated his due process rights. We disagree.

Appellant is correct the court retained discretion to strike the section 12022, subdivision (b)(2) enhancement. "'It is well established that, as a general matter, a court has discretion under section 1385, subdivision (c), to dismiss or strike an enhancement, or to "strike the additional punishment for that enhancement in the furtherance of justice.""' (*People v. Jones* (2007) 157 Cal.App.4th 1373, 1378-1379, fn. omitted.) That discretion includes striking enhancements under section 12022, subdivision (b). (*Jones*, at pp. 1381-1382.)

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to 'sentencing decisions made in the

---

**4** Section 12022, subdivision (b)(1) provides, "A person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense." Subdivision (b)(2) imposes one, two, or three years when the person described in subdivision (b)(1) is convicted of carjacking or attempted carjacking.

exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) But remand for resentencing is not required if the record demonstrates the trial court understood its sentencing discretion or "if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a silence record. [Citation.] '"[A] trial court is presumed to have been aware of and followed the applicable law."'" (*Id.* at pp. 1228-1229.)

Read in context, the court's comment, "that's the only discretionary call I have in sentencing," did not reflect a misunderstanding that the court could not strike the deadly weapon enhancement under section 1385. The court was most likely referring to its discretionary sentencing choice under section 12022, subdivision (b)(2) *as compared to* the two other parts of appellant's sentence that did *not* involve discretionary choices: the 25-years-to-life Three Strikes sentence once the court denied appellant's *Romero* request; and the imposition of two 5-year enhancements pursuant to section 667, subdivision (a)(1), which are mandatory and not subject to section 1385. (§ 1385, subd. (b).) The court also stated it believed the sentence imposed was appropriate, demonstrating it would not have stricken the enhancement in any event. Without a stronger showing that the court did not understand it had discretion to strike the section 12022, subdivision (b)(2) enhancement and would have exercised that discretion, remand for resentencing is not warranted.

### DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.                    RUBIN, J.

11